IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JOHN MILLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 03-876-SLR |
| | ) | |
| TOWN OF MILTON, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM ORDER**

At Wilmington this 31st day of March, 2006, having considered defendant's motion for judgment as a matter of law, plaintiff's motion for new trial and to supplement briefing, and defendant's motion for sanctions, as well as the papers submitted in connection therewith;

IT IS ORDERED that defendant's motions for judgment as a matter of law (D.I. 95) and for sanctions (D.I. 119) and plaintiff's motion to supplement (D.I. 118) are denied.

IT IS FURTHER ORDERED that plaintiff's motion for a new trial (D.I. 101) is granted for the reasons that follow:

1. **Standard of Review**. Fed. R. Civ. P. 59(a) provides in part:

> A new trial may be granted to all or any of the parties and on all or part of the issues in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States.

One of the reasons to grant a new trial is where "improper conduct by an attorney or the court unfairly influenced the verdict." Lucent Technologies v. Extreme Networks, Inc., 229 F.R.D. 459, 461 (D. Del. 2005); see, e.g., Forrest v. Beloit Corp., 424 F.3d 344, 351 (3d Cir. 2005)(new trial appropriate "where the allegedly improper statements or conduct make it 'reasonably probable' that the verdict was influenced by the resulting prejudice." quoting Greenleaf v. Garlock, Inc., 174 F.3d 352, 363 (3d Cir. 1999)). The decision to grant a new trial lies within the sound discretion of the trial court. Allied Chemical Corp. v. Daiflon, Inc., 449 U.S. 33, 36 (1980).

 2. Plaintiff moves for new trial on several grounds, including: (1) plaintiff was substantially prejudiced by defendant's improper presentation in closing argument of an unredacted exhibit that the court previously ordered redacted; and (2) the conduct of defense counsel throughout the case had a profoundly prejudicial and negative effect upon plaintiff's rights and adversely affected plaintiff's presentation of this case. (D.I. 102)

 3. Defendant contends that plaintiff's grounds for new trial are without merit and that the weight of the evidence supported the jury's verdict and was not improperly affected by counsel's conduct. (D.I. 107)

4. Considering these arguments in light of the authority outlined and in the context of the trial, the court finds that plaintiff is entitled to a new trial based on statements[1] made by

---

[1] As an example, defense counsel's discussion of the word "nigger" during his opening and closing arguments was substantially vouching and not related to the record. The "N" word was made part of the case by plaintiff, a black man, in that he asserted and offered the testimony of a witness to support his claim that Mayor Bushey, a white man, stated that he would never allow a "N" to be Chief of Police. However, defense counsel's statements went too far and included vouching and prejudicial remarks. Specifically, in his opening statement, defense counsel stated "[i]t's an interesting history of the strange career of a troublesome word, nigger. You may hear that repeatedly tomorrow, but I sense – my sense is that you've probably all heard it before. Certainly, anyone who grew up in New Castle County in the fifties and was on a playground heard kids deciding who was going to be it or who was going to have to hide and who was going to have to seek because when you start the game, if you would listen to the children, back in the day it was ennie meenie minie moe, catch a, and if you are putting the "N" word in there, then you've heard it and you're aware of it and you really shouldn't be shocked about it. One thing we're not going to have in this case is a Mark Furman. We're going to have a white male come in here and tell you that he's – he's in his fifties. He has used the word. . . . Mr. Kennedy [author of a book on the history of the word] says in his book here that by the way the word was used in his home, he learned it to be used many things: Big Momma would pepper her speech with reference to niggers by which she meant discreditable Negros. Other relatives growing up used it as a signal that they - [Objection made by plaintiff and sustained by the court] but defense counsel continued: "You can draw upon your own experience about how you've heard people use the word to signal that the blacks remained mere niggers in the eyes of many whites. You may draw upon your experience that others have used this term with a twist of irony, so that someone may refer to James Brown as a sho-nuff nigger." (D.I. 108 at 82-83) In his closing statement, defense counsel stated: "Plaintiff's attorney told you that this was an ugly case. Well, it is an ugly case. It's insulting because it has the "N" word in it. For some reason, plaintiff seems to be unable to say the word nigger. I told you at the outset that that's a bad word. That's a problem word. Can be, in the context. But even so, why is it that we say can't say the word? He refuses to say the

3

defense counsel and the unredacted display of exhibit DX25.[2] Although there was substantial evidence presented to support the jury's verdict, the court cannot conclude with any confidence that the overlay of defense counsel's conduct during trial did not unfairly influence and prejudice the jury against plaintiff.[3]

---

word. If this were a racial discrimination case against an Italian person that was referred to as a dago or wop, would we say, Oh, can't say the "W" word or the "D" word, or if it was someone where a Puerto Rican who was described as being a spic, would we be up here saying, Oh, you can't say the "S" word? The fact that plaintiff is entitled – the fact that the plaintiff is a representative of one particular minority does not give him any protection or benefits of any other minority. I told you in my opening that the word is a problem word, but it has - has its use in context. And we told you a little bit about context where the word is more accepted. Rap music, for example, I think, the Mayor said he heard the word and kids on the street and the word is used at times sort of as - well, not particularly as an insult directed at race. It can be an insult directed at someone just having poor upbringing, or someone that may be trying to display a little too much soul, if you will. But it's not always a word that is a strong word, as the plaintiff's attorney has - I'm not even sure what a strong word, what does that mean? . . . Now I told you at the beginning there was not going to be any Mark Furman in this case, that Mayor Bushey has said the word. He has used it at times. I'm 48 years old, born in 1956. He's older than me. I don't know too many white males growing up in the fifties in Delaware that can say, they can come into the courtroom and say they've never said that word." (D.I. 112 at 64-64).

[2]The court ordered the word "felony" redacted from defendant's exhibit DX25 prior to its admission into evidence. During his closing argument, defense counsel showed several exhibits on a large screen to the jury. He displayed a DX25 with the word "felony" clearly in view. After plaintiff objected, the exhibit was removed from the screen to which defense counsel stated, "I wish that had come to our attention sooner." (D.I. 112 at 95)

[3]The conduct of counsel for both plaintiff and defendant went well beyond zealous trial advocacy and transcended into

4

                                  /s/ Sue L. Robinson
                                 United States District Judge

---

behavior unbecoming a member of this Bar. With the snide remarks and the emotional commentaries offered by each, at every opportunity, the court was transformed into a "schoolyard supervisor" charged with monitoring the disrespectful behavior. See, e.g., Forrest v. Beloit Corp., 424 F.3d at 352 n.5 (role of trial judge should not be akin to a schoolyard supervisor). Counsel is admonished that such behavior will not be tolerated at the new trial and appropriate sanctions may be imposed. See generally Murphy v. Housing Authority & Urban Redevelopment Agency of the City of Atlantic City, 158 F. Supp.2d 438 (D. N.J. 2001)(pursuant to 28 U.S.C. § 1927, sanctions imposed on attorney who unreasonably and vexatiously multiplied court proceedings).